[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated January 28, 1999, the plaintiff wife, Donna M. Frustere-Johnson, commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown and other relief. The defendant husband, Douglas K. Johnson, appeared through counsel and filed an answer and cross-complaint dated March 4, 1999. Thereafter the plaintiff filed an amended complaint dated November 30, 1999, amending the grounds to that of the infidelity of the defendant. Both parties appeared with counsel on February 3 and February 4, 2000 and presented testimony and exhibits. The court, after hearing the testimony and reviewing the exhibits, makes the following findings of fact.
The plaintiff wife (whose maiden name was Donna M. Frustere) married the defendant husband on June 18, 1977 in Westerly, Rhode Island. She has resided continuously in the State of Connecticut for one year next preceding the date of the filing of this complaint. All statutory stays have expired. The parties have two minor children born to the plaintiff since the date of the marriage: Jessica Teresa Johnson born June 2, 1983 and Daniel Paul Johnson born July 2, 1986. No other minor child or children have been born to the plaintiff since the date of the marriage. The court further finds that no state or municipal agency has or is contributing to the support of the parties or their children.
The plaintiff is 42 years of age and in good physical health although she is taking medication to treat depression and anxiety in connection with this action. She is a high energy person and at present is the primary caretaker of the parties' children. She is employed as a part-time teacher at the Kingswood-Oxford School located in West Hartford, Connecticut. In addition she teaches aerobics at various health clubs in the area, is involved in the "Hot School Program", is an artist and operates a business known as "Support Arts" which she started in 1992/1993 with a $250.00 gift from a friend. Two years after the parties married the plaintiff received a bachelor of science degree from the University of Maine majoring in art education. In 1989 she received a masters degree from the University of Hartford in art education. Since the marriage she has been gainfully employed in various jobs on both a full-time and part-time basis. For many years she was employed as a CT Page 5523 teacher which provided her and the children substantial benefits including but not limited to significant travel (annual trips to Europe) and tuition waivers for the children's private schooling. She is highly regarded in the art field and has developed many connections with people that can help her on a professional level. She intends to continue her employment in the private school setting because of the continued benefits to her and the children. In approximately two years she expects to be working full-time at Kingswood/Oxford School and earning between $38,000.00/$42,000.00 per year whereas her current salary is $22,500.00. She also presently derives income from her other activities such as aerobics. If she worked in the public schools system her annual pay would be higher but she would lose the benefits which she now has for the children's private schooling.
The defendant is 47 years of age and in good health. He is presently employed full-time at ABB Combustion Engineering as an expediter. He has been employed by the same company since 1981. He spent 6 years on active duty in the Navy and attended college for three years before he dropped out. He has not pursued the completion of his college education which might improve his ability to increase his earnings. However, he has been gainfully employed on a full-time basis and to some extent his earnings have helped to enable the plaintiff to engage in the numerous activities she has been involved with, either individually or with the children. Although the plaintiff has been the primary caretaker of the children the defendant has been very involved in their lives and maintains a very good relationship with them. In 1997 and 1998 the defendant had gross income in the upper sixty thousands. However, in March of 1999 he was laid off and received a severance package. He was surprised and shocked at the layoff which came about as a result of downsizing. He had difficulty paying the pendente lite orders. He looked for other employment, even with companies outside the State of Connecticut. He continues to look for a higher paying job. In June of 1999 he returned to his company on a three month temporary assignment. On August 1, 1999 the defendant returned to work full-time and presently earns $52,000.00 per year. For pension purposes he was not charged with a break in service and lost only three months of seniority.
The parties relationship was good until the end of 1997. They were and continue to be hard working individuals who focused on maintaining a good family relationship. The defendant was very supportive of his wife continuing her education and becoming very involved in her numerous activities. Her mother and father were very generous in helping the parties in financing their home and in providing a new motor vehicle for her use. The extent of their generosity was a source of concern to the defendant since he believed the parties should "stand on their own financially". The parties are in dispute as to the amount owed, if CT Page 5524 anything, to her parents in connection with the financing of their home.
Because of her very active life the plaintiff was away from the defendant on numerous occasions. The defendant claims he became "frustrated" but offered little in the way of testimony to support his concerns. In January of 1998 the defendant told his wife that in the latter part of 1997 he had been intimately involved with another woman on two occasions over a two day period although he was in telephone communication with the woman for a period of six weeks. The plaintiff was not aware of the situation until the defendant told her, feeling it was best that she know. The plaintiff became very upset, vindictive and bitter. She refused to forgive him and as a result each of the parties lost any positive feelings for the other. The plaintiff became depressed and currently is taking medication and expects to continue with her medication for an additional period of six months to two years. There was no evidence of either party being romantically involved with a member of the opposite sex other than this one situation. The plaintiff testified that she just couldn't forgive and move forward. The court finds that the conduct of the defendant in getting involved with another woman, albeit for a very brief period, was a cause of the breakdown of the marriage.
The court has considered all of the statutory factors concerning custody and visitation set out in Connecticut General Statutes §§ 46b-56,46b-56a and 46b-59. The court has further considered all of the factors in Connecticut General Statutes 46b-81, 46b-82, 46b-89 and 46b-62 and other pertinent statutes, earnings and earning capacity differentials, causes for the breakdown of the marriage and the consequences of the financial awards set forth below. Judgment shall enter dissolving the marriage of the parties on the ground of irretrievable breakdown. It is furthered ordered that:
1. Custody and Parenting Time: The parties shall have joint legal custody and shared physical custody of the minor children, Jessica and Daniel. The parties shall consult and confer with each other and share in making all major decisions regarding the children's health, education, employment opportunities, welfare, and upbringing, with a view to arriving at a harmonious policy calculated to promote the best interests of the children.
Defendant's parenting time shall be as follows:
a. Alternating weekends from 5:30 p.m. Friday to Monday morning, to school bus stop or 77 New Road, Avon;
b. Every Tuesday overnight and Thursday overnight from 5:30 p.m. to CT Page 5525 school or bus stop or to 77 New Road, Avon the following morning.
All pick ups and drop offs shall be either at 77 New Road, Avon, Connecticut, school or bus stop for which defendant shall do all the transportation. Additionally, defendant may have parenting time with Jessica and Daniel at other times by agreement of the parties. Each parent shall have the right to speak by telephone with the children on a reasonable basis on those days when she/he is not parenting the children. Each parent shall keep the other apprised of their work and home telephone numbers at all times. The parties shall provide to one another reasonable notice of non-emergency cancellation of access time.
2. Holidays/Vacation: The parties will have alternating holidays commencing with defendant having the children on Memorial Day, 2000. Mother's Day and plaintiffs birthday shall be with the plaintiff. Father's Day and defendant's birthday shall be with defendant from 9:00 a.m. until 10:00 p.m., if the day does not fall within their regularly scheduled visitation period. If defendant has weekend and Monday holiday is his day, he shall return the children on Monday at 6:00 p.m. The parenting plan shall continue during the children's school-year vacations unless the parties otherwise agree.
3. Summer Vacation: Each party shall have two weeks vacation with the children during the summer. The parties may choose to take said vacations consecutively. The parties shall notify each other by May 31 of each year as to his/her choice of weeks for vacation. If a conflict arises for the weeks in the selection of a vacation, plaintiffs choice shall prevail in the odd years; defendant's choice shall prevail in even years.
During any holiday or vacation with the children, each party shall be provided with the location and phone numbers where the children may be reached. Parents shall have reasonable telephone contact with the children during such holiday and vacation periods.
4. Relocation: Each party shall provide the other with 90 days written notice of their intent to permanently change their residence.
5. Child Support: The defendant shall pay the sum of $193.00 per week as child support for the two minor children and, absent any substantial change in circumstances, the sum of $132.00 per week for one minor child in accordance with current Connecticut Child Support Guidelines commencing upon the later event: Jessica turns eighteen or graduates from high school. The orders of current child support shall be secured by a contingent wage withholding order against the defendant's earnings. CT Page 5526
The parties shall annually exchange W-2 forms no later than March 1st of each calendar year for the prior year for as long as there is child support or alimony obligations.
6. Medical Insurance and Unreimbursed Expenses: The defendant shall maintain medical and dental insurance as available through his employer for the benefit of the minor children. The plaintiff shall be responsible for 54% and the defendant shall be responsible for 46% of all unreimbursed medical, dental, counseling, opthamology, orthodontic, psychological and prescriptive expenses of the minor children. Payment of said unreimbursed bills shall be paid within 30 days of receipt of a bill showing the unreimbursed portion for same.
The plaintiff shall remain on defendant's medical and dental insurance through COBRA for the statutory period unless she is provided such insurance by her employer at no cost to her. The defendant shall pay the COBRA premiums for a period of 18 months with the plaintiff paying the premiums thereafter.
7. Alimony: Defendant shall pay to plaintiff periodic alimony in the amount of $75.00 per week for a period of eight (8) years. Alimony shall be non-modifiable as to term and amount and will automatically terminate upon the first to occur of the following events: remarriage, death of either party, or plaintiff residing with another adult under the criteria set forth in Connecticut Practice Book § 46b-86(b).
8. Life Insurance: The defendant shall maintain his current life insurance with New York Life in the amount of $20,000.00, and his coverage of $50,000.00 as available through his employer with the minor children named as beneficiaries as long as he has a child support obligation. Plaintiff shall maintain any life insurance policy which she currently has up to the amount of $20,000.00, or equivalent coverage as available through her employer, with the minor children named as beneficiaries until they reach the age of majority.
9. Real Estate: Plaintiff and defendant are currently the joint owners of certain real estate known as 77 New Road in Avon, Connecticut. The defendant shall quitclaim to the plaintiff all his right, title, and interest in and to said real property.
The plaintiff shall be responsible for any and all expenses incidental to the use and occupancy of the property, including, but not limited to, the mortgage, utilities, repairs, and property taxes from the date of dissolution forward.
Plaintiff shall make every effort to have defendant's name removed CT Page 5527 from the mortgage upon the first to occur in time:
a. Wife's re-marriage;
b. Wife's death;
c. Two years from the date of dissolution.
This does not impose a mandatory obligation upon the plaintiff to remove defendant's name from the mortgage. Further, this does not preclude defendant remaining on the mortgage voluntarily beyond these events. Until such time that plaintiff removes defendant's name from the mortgage, plaintiff shall indemnify and hold defendant harmless from any claims, debts, liabilities in connection with the marital residence. Upon sale of the marital residence, any proceeds or deficiencies shall inure to the plaintiff
10. Other Assets:
a. Defendant shall have sole ownership of his ABB pension (present value as of October 29, 1999 is $52,749.61).
b. Defendant shall have sole ownership of his 401K in the amount of $81,357.58.
c. Plaintiff will have sole ownership of her TIAA/CREF Retirement Account in the amount of $5,619.96.
d. Plaintiff shall have sole ownership of her business known as SupportArts.
e. Plaintiff shall retain her 1997 Toyota 4runner and, if applicable, the defendant shall execute all documents transferring same to Wife. The defendant shall retain his 1995 Volkswagen Jetta. Defendant shall hold the plaintiff harmless from and indemnify her from any and all debt associated with said automobile.
f. Plaintiff shall have sole ownership of her Webster Bank checking account, Fleet Bank checking and savings accounts and her Combustion Engineering Federal Credit Union Account listed on her Financial Affidavit. Defendant shall have sole ownership of his Combustion Engineering Federal Credit Union checking and savings accounts listed on his Financial Affidavit. The parties will equally divide the funds in the joint Combustion Engineering Federal Credit Union Account, if any.
11. UGMA Accounts: The two UGMA accounts held by plaintiff shall be CT Page 5528 used for the children's college education. Plaintiff shall make no withdrawals without prior discussion with and agreement of the defendant. Plaintiff shall provide defendant with December 31st and June 30th statements each year and all records of withdrawals within thirty days of same.
12. Other Personal Property: The parties shall divide their personal property as agreed or by further order of the court.
13. Debts: Plaintiff shall pay and be responsible for 100% of all the debts listed on her financial affidavit, including any unlisted credit cards and any other loans or other debts in her name. This shall include any loans from her parents and the amount currently due to Watkinson School. Defendant shall pay and be responsible for 100% of all the debts listed on his financial affidavit, including any unlisted credit cards, or other debt in his name except as set out herein.
14. Tax Exemptions: The defendant shall be entitled to claim the minor children Jessica and Daniel for federal and state tax purposes. When Plaintiff's income reaches $35,000.00, defendant shall take the tax exemption for the minor child, Daniel Johnson; and plaintiff wife shall claim Jessica Johnson.
15. Attorney's Fees: The defendant shall pay to the plaintiff the sum of $5,000.00 towards her attorney's fees to be payable in 90 days.
John R. Caruso, J.